Sep 15 09 08:55a        Pickaway Clerk              740 477 3976              p.2

IN THE COURT OF COMMON PLEAS FOR PICKAWAY COUNTY, OHIO

CHRISTAL L. FOX
939 Circle Drive
Circleville, Ohio 43113

and

JOHN FOX
939 Circle Drive
Circleville, Ohio 43113

    Plaintiff

vs.

Case No. 2009 CI

THE BROWN MEMORIAL HOME, INC.
c/o Thomas F. Tootle, Statutory Agent
180 West Franklin Street
Circleville, Ohio 43113

JURY DEMAND ENDORSED HEREON

JUDY DENNIS, Administrator
c/o Brown Memorial
158 East Mound Street
Circleville, Ohio 43113

HAROLD CULLUM
8201 US Highway 22 East
Circleville, Ohio 43113

WILLIAM SPROUT
26 Claire Court
Circleville, Ohio 43113

CHARLES GERHARDT
310 Nutmeg Court
Circleville, Ohio 43113

HELEN RUFF
13345 Clarksburg Pike
New Holland, Ohio 43145

PAUL ROAN
135 East Union Street
Circleville, Ohio 43113

FILED-COMM. PLEAS
2009 SEP 11 AM 11:08
JAMES W. DEAN
CLERK OF COURTS
PICKAWAY COUNTY

KINGSLEY LAW OFFICE 157 West Main Street, Circleville, Ohio 43113-1619 TEL (740) 477-2546 FAX (740) 477-2976

PAGE 2/13 * RCVD AT 9/15/2009 8:49:39 AM [Eastern Daylight Time] * SVR:RFAX1/0 * DNIS:2 * CSID:740 477 3976 * DURATION (mm-ss):06-30

EXHIBIT A

DEBBIE SPEAKMAN :
208 North Pickaway Street
Circleville, Ohio 43113

ROBERT McKELVEY :
955 Circle Drive
Circleville, Ohio 43113 :

WAYNE HATFIELD :
1835 Shoshoni Drive
Circleville, Ohio 43113 :

    Individually and as representatives
    of The Brown Memorial Home, Inc. :

Defendants :

## COMPLAINT

Recitals

1. Defendant, The Brown Memorial Home, Inc. ("The Home") is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business located at 158 East Mound Street, Circleville, Ohio 43113, Pickaway County.

2. The Home is a nursing home facility that is overseen by a Board of Directors.

3. The Home is an "employer," as defined under 29 U.S.C. § 630.

4. Defendant, Judy Dennis, is the Administrator for The Home.

5. Defendant, Harold Cullum, is the President of the Board of Trustees of The Home.

6. Defendant, William Sprout, is the Vice President of the Board of Trustees of The Home.

7. Defendant, Charles Gerhardt, is the Treasurer of the Board of The Brown Memorial House, Inc.

8. Defendants, Helen Ruff, Paul Roan, Debbie Speakman, Robert McKelvey, and Wayne Hatfield are members of the board of The Home.

9. Plaintiff's immediate supervisor at the time of her termination was Administrator John Fox, her spouse.

KINGSLEY LAW OFFICE 157 West Main Street, Circleville, Ohio 43113-1619 TEL (740) 477-2546 FAX (740) 477-2976

2

10.   For nearly 24 years Plaintiff worked in many nursing and supervisory capacities at The Home.

11.   During her employment, Plaintiff was a dutiful and exemplary employee who was never disciplined.

## FIRST CLAIM
### (Breach of Contract)

12.   Plaintiff incorporates paragraphs 1 through 11 as if fully rewritten herein.

13.   On or about 3/23/1985, Plaintiff was hired as a Nursing Assistant at The Home.

14.   On or about November, 1992, upon earning her LPN degree, Mrs. Fox was duly promoted to the position of LPN at The Home. While serving as an LPN, Mrs. Fox was designated as the Quality Assurance Nurse.

15.   On or about 11/1993, Mrs. Fox was promoted to the position of MDS Nurse.

16.   In early 1999, Mrs. Fox was offered the position of MDS Coordinator if she went back to school and earned her RN degree.

17.   This offer included the express term that, upon becoming the MDS Coordinator, Mrs. Fox would have employment until retirement, unless discharged for cause.

18.   At that time The Home had no written policy on employment and delegated that decision to John Fox who was authorized to offer any term of employment he deemed appropriate in his absolute discretion.

19.   Plaintiff reasonably relied to her detriment on the offer for continued employment until retirement and went back to school to earn her RN degree.

20.   On or about 6/2001, after earning her RN degree, Plaintiff was promoted to the position of MDS Coordinator.

21.   On or about 6/2007, Plaintiff was offered and accepted the additional position of Director of Nursing.

22.   Again, she was promised that the position was until retirement unless discharged for cause.

23.   She dutifully performed in an exemplary manner the responsibilities of both positions.

24.   On 2/16/2009, after nearly 24 years of faithful, dutiful service Plaintiff was terminated without cause by Directors Harold Cullum and William Sprout.

KINGSLEY LAW OFFICE  157 West Main Street, Circleville, Ohio 43113-1619  TEL (740) 477-3546  FAX (740) 477-2976

3

25.   The Board of Directors of The Home gave Plaintiff absolutely no reason for her termination.

26    The Home wrongfully breached Plaintiff's contract of lifetime employment.

27.   The members of the board wrongfully ratified the actions of Director Cullum and William Sprout.

28.   As a result, Plaintiff, has suffered lost wages, retirement benefits, health insurance costs, has suffered severe mental anguish and was otherwise damaged.

## SECOND CLAIM
(Breach of Implied Covenant of Good Faith and Fair Dealing)

29.   Plaintiff incorporates paragraphs 1-28 as if fully rewritten herein.

30.   Plaintiff's employment contained an implied-in-law covenant of good faith and fair dealing.

31.   The Home breached its implied covenant of good faith and fair dealing by summarily discharging Mrs. Fox on 2/16/09 without cause, without mention of any reason, and without taking into consideration Mrs. Fox's long-term record of unblemished employment.

32.   As a result, Plaintiff has wages, retirement benefits, health insurance, has suffered severe mental anguish and suffering and was otherwise damaged.

## THIRD CLAIM
(Age Discrimination)

33.   Plaintiff incorporates paragraphs 1-32 as if fully rewritten herein.

34.   Plaintiff was born on 1/25/1954, which makes her 55 years old as of the date of her termination.

35.   Mrs. Fox holds both an LPN and RN nursing degrees from Hocking Technical College, and was employed in various nursing and supervisory capacities at The Home for nearly 24 years. Thus, she was qualified for her particular job.

36.   Plaintiff's termination on 2/16/09 was an adverse employment action.

37.   The Home replaced Mrs. Fox with an individual that is substantially younger than Mrs. Fox.

KINGSLEY LAW OFFICE  157 West Main Street, Circleville, Ohio 43113-1619  TEL (740) 477-2546  FAX (740) 477-2976

4

PAGE 5/13 * RCVD AT 9/15/2009 8:49:39 AM [Eastern Daylight Time] * SVR:RFAX1/0 * DNIS:2 * CSID:740 477 3976 * DURATION (mm-ss):06-30

38. On 1/30/09, within two weeks of Plaintiff's termination, William Sprout announced a policy that anyone who had worked at The Home for more than ten years would be terminated so that The Home could have "a fresh set of eyes."

39. As of the date of her termination on 2/16/2009, Mrs. Fox was within three years of being vested with full retirement benefits.

40. The Home terminated Plaintiff's contract of employment to save money which is a violation of 29 U.S.C § 621 et seq. and O.R.C. § 4112.02 (B) et seq.

41. The Board of Directors ratified the termination and the unlawful policy.

42. As a result, Plaintiff lost wages, retirement benefits, health insurance, has suffered severe mental anguish and was otherwise injured.

43. Defendants' action were willful, wanton and malicious and in violation of statute entitling Plaintiff to punitive damages and attorney fees.

## FOURTH CLAIM
(Sex Discrimination)

44. Plaintiff incorporates paragraphs 1-43 as if fully rewritten herein.

45. Plaintiff was married to the Administrator of The Home, Mr. Fox, for the entire twenty-four years of her employment.

46. The Home had no anti-nepotism policy.

47. On 2/16/2009, just before Plaintiff was terminated, Mr. Fox was notified that he was being terminated.

48. Plaintiff was terminated for the reason of her marriage to Mr. Fox.

49. Such adverse employment action was based upon the basis of her sex (marital status) in violation of 42 U.S.C. § 2000(e) et seq. and O.R.C. § 4112.01 et seq.

50. As a result, Plaintiff lost wages, retirement benefits, health insurance, has suffered severe mental anguish and was otherwise injured.

51. The actions of Defendants were ratified by the Board.

52. The actions of Defendants were willful, wanton and malicious entitling Plaintiff to punitive damages and attorney fees.

53. The actions of Defendants were in violation of statute entitling Plaintiff to statutory damages.

5

PAGE 6/13 * RCVD AT 9/15/2009 8:49:39 AM [Eastern Daylight Time] * SVR:RFAX1/0 * DNIS:2 * CSID:740 477 3976 * DURATION (mm-ss):06-30

KINGSLEY LAW OFFICE 157 West Main Street, Circleville, Ohio 43113-1619 TEL (740) 477-2546 FAX (740) 477-2976

### FIFTH CLAIM
(Public Policy)

54. Plaintiff incorporates paragraphs 1-53 as if fully rewritten herein.

55. Marriage is protected in the constitutions of the United States, the Constitution of the State of Ohio and various statutes.

56. Public policy clearly favors and protects people to be free to marry and remain married to the person of their choosing.

57. Public policy prohibits an employer from taking an adverse personnel action against an employee solely upon the basis of an adverse personnel action taken against a spouse.

58. The dismissal of Plaintiff solely because she was married to another employee who was terminated violates public policy.

59. The Board formulated or ratified the policy and termination.

60. As a result, Plaintiff lost wages, retirement benefits, health insurance, has suffered severe mental anguish and was otherwise injured.

61. The actions of Defendants were willful, wanton and malicious entitling Plaintiff to punitive damages and attorney fees.

### SIXTH CLAIM
(Slander)

62. Plaintiff incorporates paragraphs 1-61 as if fully rewritten herein.

63. Defendants falsely state to others that Plaintiff quit.

64. As a result, Plaintiff's professional and personal reputation has been damaged.

65. The Board individually repeated and/or ratified the false statements.

66. As a result, Plaintiff has suffered adverse employment actions, suffered severe mental anguish and was otherwise injured.

67. The actions of Defendants were willful, wanton and malicious entitling Plaintiff to punitive damages and attorney fees.

68. Each publication damages Plaintiff and therefore, Plaintiff has no adequate remedy at law.

KINGSLEY LAW OFFICE  157 West Main Street, Circleville, Ohio 43113-1619  TEL (740) 477-2546  FAX (740) 477-2976

6

### SEVENTH CLAIM
(Breach of Contract)

69. Plaintiff, John Fox, was employed at the Home from September 1983 until 2/16/09.

70. On 12/12/07, John Fox and the Home entered into a written employment contract.

71. John Fox was wrongfully threatened with termination of employment.

72. The Home and John Fox negotiated a written severance agreement attached hereto as Exhibit A.

73. Paragraph 5 of the agreement provided, in part, "Separate and apart from this Agreement, Brown will pay Employee for any accrued but unused paid time off."

74. The amount of accumulated sick time of John Fox was thirty days, entitling him to 240 hours which is $9,924.00.

75. The Home willfully refuses to pay the severance accumulated sick time due and owing.

### EIGHTH CLAIM
(Retaliation)

75. Plaintiff, John Fox incorporates paragraphs 11-75 as if fully rewritten herein.

76. Defendants refuse to pay accumulated sick time in retaliation of Plaintiff's wife's claim for wrongful termination of employment.

77. Defendants refuse to pay accumulated sick time due to wife's exercise of her right to open courts against me and due to my marital status to her.

78. The actions of Defendants were willful wanton and malicious entitling Plaintiff to punitive damages and attorney fees.

**WHEREFORE**, Plaintiff, Christal Fox, demands judgment against Defendants, both jointly and severally:

(1) in the amount of $1,200,000.00;

(2) for a mandatory injunction that her personnel file be purged of all adverse personnel actions related to this wrongful discharge;

(3) for a favorable letter of recommendation;

7

(4) for her costs of action.

Plaintiff, John Fox demands judgment in Claim Seventh, both jointly and severally, in the amount of $9,924.00, in Claim Eighth for $25,000 plus his costs of action.

*James R. Kingsley*
James R. Kingsley (0010720)
Attorney for Plaintiff
157 West Main Street
Circleville, Ohio 43113
Telephone No. (740) 477-2546
FAX:            (740) 477-2976

### JURY DEMAND

Plaintiff demands a jury of eight (8) persons.

*James R. Kingsley*
James R. Kingsley
Attorney for Plaintiff

KINGSLEY LAW OFFICE 157 West Main Street, Circleville, Ohio 43113-1619 TEL.(740) 477-2546 FAX (740) 477-2976

8

## AGREEMENT AND GENERAL RELEASE

Brown Memorial Home, Inc. ("Brown") and John Fox ("Employee"), in exchange for and in consideration of the promises, representations, covenants, and agreements set forth herein, enter into this Agreement and General Release ("Agreement"), which consists of 3 consecutively numbered pages and Exhibit 1, as follows:

1. Employee wishes and agrees to compromise, resolve, and settle all possible disputes and claims pertaining to or arising from Employee's employment and discontinuation of employment effective February 16, 2009 with Brown.

2. Except as provided below, Employee hereby does unconditionally release, acquit, extinguish, and forever discharge any right or claim, known or unknown, that Employee may have in connection with Employee's employment with Brown, under any federal, state, or local law, or judicial action of any kind, including, but not limited to, any right or claim arising under the Federal Age Discrimination in Employment Act of 1967, as amended, the Older Workers Benefit Protection Act, attorneys' fees, costs, or any right that has accrued or may accrue (up to and including the date of receipt of payment(s) referred to in paragraph (5) to interest or interest claims at common law or under R.C. 1343.03, or under any provision of the revised code, against Brown and/or its parent, Brown, affiliates, subsidiaries, successors, assigns, agents, shareholders, officers, trustees, employees, and representatives, and all persons acting by, through, under, or in concert with any of them (collectively "Releasees"), on or at any time prior to the date Employee executes this Agreement. Employee's release does release and waive Employee's right to (a) file a court action (except an action challenging the validity of any ADEA waiver) or (b) seek or recover individual remedies or damages in any administratively initiated action. The releases set forth herein do not extend to rights or claims that may arise from events occurring after execution of this Agreement or to any right which by express terms of law may not under any circumstances be waived, released, or extinguished.

3. Employee, having had the opportunity to be advised by counsel, expressly waives all claims for damages which exist as of this date, but of which Employee does not now know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known would materially affect Employee's decision to enter into this Agreement.

4. Employee represents and agrees that Employee has not filed any complaints or charges against any of the Releasees with any federal, state, or local agency or court. Employee represents and agrees that Employee has not heretofore assigned or transferred or purported to assign or transfer, to any person or entity, any right to assign any claim against any of the Releasees which Employee is releasing, acquitting or discharging through this Agreement.

5. In consideration for Employee signing this Agreement and agreeing to the commitments herein, Brown agrees to (a) provide Employee twenty-six (26) weeks of Employee's current base pay as severance, to be paid in accordance with Brown's regular payroll practices, with payments to commence with first full pay period following the expiration of the revocation period without revocation; (b) not contest Employee's claim for unemployment compensation benefits made after the expiration of the payments in 5(a); and (c) permit Employee to submit his resignation, which is attached as Exhibit 1. The payments shall not be eligible for any of Brown's retirement savings plans. **Separate and apart from this Agreement, Brown will pay Employee for any accrued but unused paid time off.**

6. Employee shall keep the terms and facts of this Agreement completely confidential except as provided by paragraph 8. Employee acknowledges that Employee has not disclosed, and shall not hereafter disclose, any information concerning this Agreement to anyone. It is understood that this Agreement shall be subject to exceptions for, and hence not apply to Employee revealing the terms of this Agreement to Employee's attorney, financial advisor, or immediate family on the condition of confidentiality or as otherwise required by law or court order.



2957155v1  John Fox's Initials & Date                 1

7. Employee represents and agrees that Employee has been afforded a reasonable amount of time to review this Agreement, to understand its contents, to voluntarily enter into this Agreement and to be bound by its specific, stated obligations and has been advised to consult with an attorney prior to executing this Agreement.

8. Employee agrees to indemnify and hold each and all of the Releasees harmless from and against any and all loss, cost, damage, or expense, including, but not limited to, attorney's fees incurred by the Releasees, or any one of them, arising out of, or in any direct or indirect way related to, any breach of this Agreement by Employee or the fact that any representation made herein by Employee was false when made. This provision and the provisions of paragraphs 6 and 11 shall not apply to any judicial or administrative action filed by Employee to the extent such action is based upon any right which by express terms of law may not under any circumstances be waived, released, or extinguished.

9. Employee agrees to cooperate and be available to Brown on a reasonable basis to respond to questions from Brown, which arise out of Employee's former responsibilities with Brown or its predecessors/affiliates. Additionally, Employee agrees to cooperate and be available on a reasonable basis to assist in the defense of and serve as a witness in any administrative proceeding or litigation faced by Brown considering matters in which Employee was involved or had knowledge while an employee of Brown or its predecessors or affiliates. Employee agrees to inform any subsequent employer of these obligations as necessary. To the extent that the severance payments previously described in this Agreement have ceased, Brown agrees to compensate Employee at Employee's most recent Brown hourly rate plus mileage and reasonable expenses in the event Employee is unable to respond to Brown's or Brown's questions over the telephone, and Employee is required to attend any meetings to fulfill Employee's obligation under this paragraph.

10. Employee represents and warrants that as a result of Employee's employment with Brown that Employee had access to, and became familiar with, Brown's and Brown's trade secrets and proprietary information that Brown and Brown maintains as confidential ("Confidential Information"), which includes such information as, but is not limited to, employee information, resident lists or information, pricing information, or any other trade secret as defined in O.R.C. Section 1333.61, and agrees not to use or disclose that Confidential Information for the benefit of Employee or anyone else as defined by or in violation of O.R.C. Sections 1333.61 through 1333.69. Employee further represents and warrants that Employee has returned all such Confidential Information and has not made, allowed to be made, caused to be made or maintained any copies in any media (i.e., documents, computer disks or tapes, or any other storage medium) of any Confidential Information. Employee further represents and warrants that Employee has returned any and all other Brown property.

11. Except as provided by paragraph 8, Employee agrees that Employee will not disparage Brown or the Releasees or will not make any statement to any third party, which could reasonably be foreseen to cause harm to the personal or professional reputation of Brown or Brown. Employee agrees that this non-disparagement clause is a material term of this Agreement. This non-disparagement clause shall not apply to statements made under oath if Employee is compelled to testify pursuant to lawful subpoena.

12. The preceding paragraphs provide Employee due consideration for the promises that Employee is being asked to enter into in this Agreement. Employee's signature at the conclusion of this document signifies Employee's complete agreement with the promises and with the sufficiency of this consideration for Employee's and Brown's mutual obligations contained in this document.

13. Employee acknowledges that this Agreement shall not in any way be construed as an admission by Brown or any other Releasee of any wrongdoing whatsoever against Employee and Brown specifically disclaims any liability for any wrongdoing against Employee, and denies any such wrongdoing, on the part of itself or any of the other Releasees.

2957155v1   John Fox's Initials & Date                    2

PAGE 11/13 * RCVD AT 9/15/2009 8:49:39 AM [Eastern Daylight Time] * SVR:RFAX1/0 * DNIS:2 * CSID:740 477 3976 * DURATION (mm-ss):06-30

14. This Agreement shall be binding upon Brown and Employee's heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of the Releasees and each of them, and to their heirs, administrators, representatives, executors, successors, and assigns.

15. This Agreement shall in all respects be interpreted, enforced, and governed under the laws of the United States and the State of Ohio without regard to Ohio's conflict of laws provisions. Employee agrees that the proper, convenient and exclusive venue for any legal proceedings relating to this Agreement is the Common Pleas Court of Pickaway County, Ohio or the U.S. District Court for the Southern District of Ohio, and Employee waives any defense, whether asserted by motion or pleading, that said courts are an improper or inconvenient venue. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

16. Should any provision of this Agreement be declared or be determined by any Court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

17. This Agreement sets forth the entire agreement between Brown and Employee, and fully supersedes any and all prior agreements or understandings whether written or oral between such parties pertaining to the subject matter hereof.

18. Employee (a) shall have a period of twenty-one (21) days from Employee's last date of employment to accept this Agreement by executing it and returning it to Harold Cullum as provided below, and (b) shall have seven (7) days following Employee's execution of this Agreement during which Employee may revoke the Agreement by providing Brown written notice of revocation. Any revocation must be in writing and addressed to and received by Harold Cullum, Board Chair, February 23, 2009 by 4:30 P.M. EST within the applicable time period. The 21-day period is waivable by Employee, but the 7-day period is not waivable. If this Agreement is timely accepted by Employee and then is not revoked by Employee during the 7-day time period, it shall be deemed accepted. The Agreement shall not be effective or enforceable until the revocation period has expired without revocation.

Agreement issued to Employee on February 16, 2009 by Harold Cullum.

AGREEMENT MAY NOT BE EXECUTED BY EMPLOYEE UNTIL AFTER EMPLOYEE'S LAST DATE OF EMPLOYMENT.

Employee:
_____ 2/20/2009        _____ 2/20/09
John Fox                    Date         Witness                 Date

Brown Memorial Home, Inc.
_____ 2/20/09          _____ 2/20/09
Harold Cullum              Date          Witness                 Date
Board Chair

2957155v1   John Fox's Initials & Date                3

I, John Fox, resign my employment with Brown Memorial Home, Inc. effective February 16, 2009.

_____          _____
John Fox

Witnessed: [signature] 2/20/09
W/H-Sprout

2957155v1   John Fox's Initials & Date                4

PAGE 13/13 * RCVD AT 9/15/2009 8:49:39 AM [Eastern Daylight Time] * SVR:RFAX1/0 * DNIS:2 * CSID:740 477 3976 * DURATION (mm-ss):06-30