IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTAL L. FOX, *et al.*

    Plaintiffs,

v.

THE BROWN MEMORIAL HOME,
INC., *et al.*,

    Defendants.

Case No. 2:09-cv-915
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE NORAH
MCCANN KING

## OPINION AND ORDER

Plaintiffs Christal L. Fox and John Fox brought this wrongful termination action against Defendant The Brown Memorial Home, Inc. (the "Home"); the current Administrator of the Home; Harold Cullum and William Sprout, the President and Vice President of the Board of Trustees of the Home, respectively; and other individual members of the Board of Trustees of the Home. This matter is before the Court for consideration of Defendants' Motion for Partial Judgment on the Pleadings. (Doc. 12.) For the reasons that follow, Defendants' Motion is **GRANTED**.

### I. Background

Defendant the Home, an incorporated nursing home and an employer in the state of Ohio, employed Plaintiffs Mrs. Fox and Mr. Fox in multiple capacities for almost 24 years. (Compl. ¶¶ 1–3, 10, 69.) Mrs. Fox was married to Mr. Fox, the Administrator of the Home, for the entire 24 years of her employment. (*Id.* at ¶ 45.) Throughout this time, the Home did not maintain an anti-nepotism policy. (*Id.* at ¶ 46.)

The Home hired Mrs. Fox as a Nursing Assistant in March of 1985. (Compl. ¶ 13.) In November of 1992, after Mrs. Fox earned her LPN degree, she was promoted to the position of

Quality Assurance Nurse at the Home. (*Id.* at ¶ 14.) A year later, she was promoted to the position of Minimum Data Set ("MDS") Nurse. (*Id.* at ¶ 15.) In early 1999, the Home offered Mrs. Fox the position of MDS Coordinator upon the condition that she earn her RN degree. (*Id.* at ¶ 16.) Mrs. Fox alleges that this offer included the express term that, if she were given this position, she would be guaranteed employment until retirement, unless discharged for cause. (*Id.* at ¶ 17.) The Complaint states that, at this time, the Home had no written policy on employment and Mr. Fox, as Administrator, was authorized to use his discretion when offering terms of employment. (*Id.* at ¶ 18.) Mrs. Fox alleges that she went back to school to earn her RN degree in reliance on the Home's offer of continued employment as the MDS Coordinator until retirement. (*Id.* at ¶ 19.) After earning her RN degree, Mrs. Fox was promoted in June of 2001 to the position of MDS Coordinator. (*Id.* at ¶ 20.) She alleges that in June of 2007, she was offered and accepted the position of Director of Nursing; she alleges she was again promised the position until retirement unless discharged for cause. (*Id.* at ¶¶ 21–22.)

Mr. Fox was terminated on February 16, 2009. (Compl. ¶ 47.) The same day, Plaintiff alleges that Defendants Cullum and Sprout, with ratification from the Board of Directors, terminated her, without providing a reason for her discharge. (*Id.* at ¶¶ 24, 25, 47, 51.) Immediately prior to the terminations, Mr. Fox had been Mrs. Fox's immediate supervisor. (*Id.* at ¶ 9.)

Plaintiffs originally brought this case in the Court of Common Pleas for Pickaway County, Ohio in September of 2009; the case was removed to this Court the following month. (Doc. 1.) Mrs. Fox asserts claims for breach of contract (Claim 1), breach of implied covenant of good faith and fair dealing (Claim 2), age discrimination (Claim 3), sex discrimination (Claim 4), violation of public policy (Claim 5), and slander (Claim 6). (Compl. ¶¶ 12–68.) Mr.

2

Fox asserts claims for breach of contract (Claim 7) and retaliation (Claim 8). (*Id.* at ¶¶ 69–78.) Defendants have filed a Motion for Partial Judgment on the Pleadings seeking the dismissal of Mrs. Fox's claims for breach of implied covenant of good faith and fair dealing (Claim 2), sex discrimination (Claim 4), and violation of public policy (Claim 5); as well as Mr. Fox's claim for retaliation (Claim 8). (Doc. 12.)

## II. Standard of Review

The standard of review for a motion under Rule 12(c) is the same as for a motion under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001)). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Id.* 592 F.3d at 722 (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted)).

The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court "must take all of the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949–50 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

3

### III. Analysis

#### A. Breach of Duty of Good Faith and Fair Dealing (Claim 2)

Under Ohio law, "[t]he duty to act in 'good faith' is an implicit term of every contract," but a breach of that duty "cannot stand alone as a separate cause of action, independent of the underlying claim for breach." *Eggert Agency, Inc. v. NA Mgmt. Corp.*, No. 2:07-cv-1011, 2008 U.S. Dist. Lexis 90830, *10 (S.D. Ohio Aug. 12, 2008) (citing *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 108 Ohio App. 3d 637 (1996); *Krukrubo v. Fifth Third Bank*, 2007 Ohio 7007 (Ohio Ct. App. 2007)). Because "'a claim for breach of contract subsumes [an] accompanying claim for breach of the duty of good faith and fair dealing,'" when parties have entered into a contract, "no separate tort cause of action exists for breach of good faith." *Id.*, 2008 U.S. Dist. Lexis 90830 at *10–11 (quoting *Krukrubo*, 2007 Ohio 7007; citing *Northeast Ohio College of Massotheraphy v. Burek*, 144 Ohio App. 3d 196, 204 (Ohio Ct. App. 2001); *Lakota*, 108 Ohio App. 3d at 646, 671; *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 105 (Ohio 1985)).

Because Mrs. Fox's claim for breach of contract (Claim 1) subsumes her claim for breach of good faith and fair dealing (Claim 2), Defendants are entitled to judgment as a matter of law as to Claim 2.

#### B. Sex Discrimination (Claim 4)

Mrs. Fox alleges that she was terminated due to her marriage to Mr. Fox and that "[s]uch adverse employment action was based upon . . . her sex (marital status)" in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, *et seq.*, and Chapter 4112 of the Ohio Revised Code.

4

### *1.  Title VII*

Under Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). In additional to simple sex discrimination, Title VII prohibits "sex-plus" discrimination, which occurs "'when a person is subjected to disparate treatment based not only on her sex, but on her sex considered in conjunction with a second characteristic.'" *Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 432 (6th Cir. 2004) (quoting *Derungs v. Wal-Mart Stores, Inc.*, 141 F. Supp. 2d 884, 890–91 (S.D. Ohio 2000)). "'In a sex-plus or gender-plus case . . . [a female] plaintiff must . . . prove that the subclass of women was unfavorably treated *as compared to the corresponding subclass of men*.'" *Id.*, 374 F.3d at 432 (quoting *Derungs*, 141 F. Supp. 2d at 891) (emphasis in original). "'*Absent such a [corresponding] subclass [of men], a plaintiff cannot establish sex discrimination*.'" *Id.*, 374 F.3d at 432 (quoting *Derungs*, 141 F. Supp. 2d at 891) (emphasis added). For example, the subclass of married women may be compared to the subclass of married men, consistent with regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") which provide that "an employer's rule which forbids or restricts the employment of married women and which is not applicable to married men is a discrimination based on sex prohibited by [Title VII]." 29 CFR § 1604.4(a).

In this case, Mrs. Fox does not allege that a subclass of women was treated unfavorably compared to a subclass of men. Plaintiffs do not allege that Defendants enforced a rule which unfavorably treated married women as compared to married men (or married women whose husbands had been fired, as compared to married men whose wives had been fired). Because the Complaint does not allege the existence of a similarly situated male subclass, Mrs. Fox cannot demonstrate that she was a victim of sex discrimination under Title VII.

5

### 2. *Ohio Law*

Ohio's employment discrimination statute also prohibits discrimination based on a person's sex. Ohio Rev. Code § 4112.02(A). The Supreme Court of Ohio has held that "federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of [Chapter 4112 of the Ohio Revised Code]." *Little Forest Med. Ctr. v. Ohio Civil Rights Com.*, 61 Ohio St. 3d 607, 609-610 (Ohio 1991) (citations omitted). This is true in cases involving "sex-plus" discrimination: For a female plaintiff to establish "sex-plus" discrimination, Ohio law requires the existence of a corresponding subclass of men. *See Mustard v. Timothy J. O'Reilly Co.*, 2004 Ohio 425, P37 (Ohio Ct. App. Feb. 2, 2004) (citing *Coleman v. B-G Maint. Mgmt.*, 108 F.3d 1199, 1203 (10th Cir. 1997); *Martinez v. NBC Inc.*, 49 F. Supp. 2d 305, 310 (S.D.N.Y. 1999)). For the same reasons discussed as to Title VII, Mrs. Fox cannot demonstrate sex discrimination under Chapter 4112 of the Ohio Revised Code.

Because Plaintiff can show sex discrimination under neither Title VII nor the Ohio Revised Code, Defendants are entitled to judgment as a matter of law as to Claim 4.

### C. **Violation of Public Policy (Claim 5)**

Mrs. Fox alleges that Defendants terminated her employment "solely because she was married to another employee who was terminated," and such termination violates public policy. (Compl. ¶ 58.) The Complaint states that "marriage is protected in the constitutions of the United States . . . [and] the State of Ohio" as well as "various statutes." (*Id.* at ¶ 55.) The Complaint also states that public policy "clearly favors and protects people to be free to marry and remain married to the person of their choosing," and "prohibits an employer from taking an adverse personnel action against an employee solely upon the basis of an adverse personnel action taken against a spouse." (*Id.* at ¶¶ 56–57.)

6

The Ohio Supreme Court has recognized the tort of wrongful discharge in violation of public policy as an exception to the employment-at-will doctrine. *Painter v. Graley*, 70 Ohio St. 3d 377, 382 (Ohio 1994). The elements of the tort are: (1) "[t]hat clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element)"; (2) "[t]hat dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element)"; (3) "[t]he plaintiff's dismissal was motivated by conduct related to the public policy (the causation element)"; and (4) "[t]he employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)." *Id.*, 70 Ohio St. 3d at 384 n.8 (citing H. Perritt, *The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie?*, 58 U. CIN. L. REV. 397, 398–99 (1989)).

The first element is satisfied only "where an employer has discharged his employee in contravention of a 'sufficiently clear public policy,'" which "may be discerned . . . based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law." *Graley*, 70 Ohio St. 3d at 384. "[A]n exception to the traditional doctrine of employment-at-will should be recognized," however, "only where the public policy alleged to have been violated is of equally serious import as the violation of a statute." *Id.*, 70 Ohio St. 3d at 384 (citing *Greeley v. Miami Valley Maint. Contractors*, 49 Ohio St. 3d 228, 234 (Ohio 1990)).

The Court must therefore determine whether a "clear public policy" may be discerned from the Constitutions of Ohio and the United States, or from other Ohio law, that prohibits an employer from taking an adverse personnel action against an employee on the basis of an adverse personnel action taken against the employee's spouse.

7

Plaintiffs have identified no authority to suggest that such a policy exists under Ohio law, instead pointing to an individual's right to marry under the Constitutions of Ohio and the United States. This right does not, however, present a clear public policy against taking an adverse personnel action against an employee on the basis of an adverse personnel action taken against the employee's spouse.

Ohio courts have found that "[t]here is no public policy against discharging an employee based upon [her] marital status." *Poland Twp. Bd. Of Trustees v. Swesey*, 2003 Ohio 6726, n.2 (Ct. App. Oh. Dec. 12, 2003) (citing *Van Sweden v. Goodyear Tire Rubber Co.*, 2002 Ohio 2654 (Ct. App. Oh. May 29, 2002)). Furthermore, the Sixth Circuit has found that nepotism policies, which arguably infringe the right to marry at least as much as Defendant's alleged actions in this case, do not violate Ohio public policy. *Wright v. MetroHealth Medical Ctr.*, 58 F.3d 1130, 1140 (6th Cir. 1995). In *Wright*, the plaintiffs claimed that the defendant's "nepotism policy violates Ohio public policy that strongly prefers marriage to cohabitation." *Id.*, 58 F.3d at 1140. The Sixth Circuit concluded that, because the "nepotism policy [did] not create a legal obstacle that would prevent a class of people from marrying," it did "not directly or substantially interfere with the right to marry," and the Court "[found] nothing in Ohio law that shows that nepotism policies violate Ohio public policy." *Id.*, 58 F.3d at 1135–36, 1140. Likewise, this Court finds nothing in Ohio law that shows a clear public policy against terminating an individual based on his or her spouse's termination. Defendants are therefore entitled to judgment as a matter of law as to Claim 5.

8

### D. <u>Retaliation (Claim 8)</u>

#### 1. *Title VII*

To succeed on a Title VII retaliation claim, a plaintiff must first show that "'[he] engaged in activity protected by Title VII.'" *Thompson v. N. Am. Stainless, LP*, 567 F.3d 804, 808–09 (6th Cir. 2009) (quoting *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008)). This element requires that the plaintiff have *personally* engaged in protected activity; the requirement cannot be met by a third party. In *Thompson*, the plaintiff alleged that "he was punished for a discrimination complaint brought by his then-fiancee," and the Sixth Circuit held that Title VII "does not create a cause of action for third-party retaliation for persons who have not personally engaged in protected activity." *Thompson*, 567 F.3d at 809, 816. Here, Mr. Fox alleges that Defendants retaliated against him not due to his own protected activity, but due to Mrs. Fox's protected activity. Because he does not allege that he personally engaged in protected activity, he cannot assert a claim for retaliation under Title VII.

#### 2. *Ohio Law*

Similar to federal law, Ohio law prohibits retaliating against an employee who has exercised his or her rights under Chapter 4112 of the Ohio Revised Code. *Peterson v. Buckeye Steel Casings*, 133 Ohio App. 3d 715, 727 (Ohio Ct. App. 1999) (citing Ohio Rev. Code § 4112.02(I)). As in other areas covered by Title VII, "Ohio courts rely on federal case law" "[w]hen analyzing retaliation claims" brought pursuant to Ohio law. *Id.*, 133 Ohio App. 3d at 727 (citing *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.*, 99 Ohio App. 3d 396, 402 (1994). As would be required for a federal claim of retaliation, a plaintiff must first prove "that [he] engaged in protected activity." *Id.*, 133 Ohio App. 3d at 727. Applying federal case law, discussed above, the Court finds that Mr. Fox's claim for retaliation under Ohio law

9

fails because he does not allege that he personally engaged in protected activity. *Thompson*, 567 F.3d at 809, 816.

Because Title VII and Ohio Revised Code Chapter 4112 do not create a cause of action for retaliation for a person who has not personally engaged in protected activity, Defendants are entitled to judgment as a matter of law as to Claim 8.

## IV. Conclusion

For the reasons discussed above, the Court hereby **GRANTS** Defendants' Motion for Partial Judgment on the Pleadings (Doc. 12) and **DISMISSES** Plaintiffs' Claims for breach of good faith and fair dealing (Claim 2), sex discrimination (Claim 4), violation of public policy (Claim 5), and retaliation (Claim 8).

**IT IS SO ORDERED.**

8-10-2010
**DATED**

**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**